**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JUAN LOPEZ-ZUNIGA, <br><br> Defendant. | Case No.  17-CR-4009-LTS <br><br> **REPORT AND RECOMMENDATION** |

## TABLE OF CONTENTS

*I.   BACKGROUND* .................................................................................................. 2
  *A.   Warrant #1 (Exhibit A)* ................................................................................ 2
  *B.   Warrant #2 (Exhibit B)* ................................................................................ 4
  *C.   Warrant #3 (Exhibit C)* ................................................................................ 5
  *D.   Warrant #4 (Exhibit D)* ................................................................................ 7
*II.  LEGAL PRINCIPLES* ......................................................................................... 8
*III. DISCUSSION* ..................................................................................................... 9
  *A.   Warrant #1 (Exhibit A) and Warrant #2 (Exhibit B)* ..................................... 9
  *B.   Warrant #3 (Exhibit C)* .............................................................................. 14
  *C.   Warrant #4 (Exhibit D)* .............................................................................. 16
*IV.  CONCLUSION* .................................................................................................. 17

This matter is before the court on Defendant Juan Lopez-Zuniga's Amended Motion to Suppress (Doc. 18).  Lopez-Zuniga seeks to suppress evidence obtained from the use of mobile tracking devices on his vehicle, arguing the four warrants authorizing the use of the tracking devices each lacked probable cause.  The United States filed a

written resistance (Doc. 26) asserting that the warrants are supported by probable cause, and, if not, that the agents relied on the warrants in good faith. I recommend granting the motion to suppress.

## I. BACKGROUND

### A. *Warrant #1 (Exhibit A)*

On December 21, 2015, Special Agent Dan Louwagie with the Minnesota Bureau of Criminal Apprehension submitted an application and affidavit for a state warrant authorizing the use of a mobile tracking device on Lopez-Zuniga's vehicle. Ex. A, at 1-7.[1] The affidavit contained approximately four pages supporting the application for the tracking device warrant. A large majority of those facts involved drug-trafficking activities of multiple named persons other than Lopez-Zuniga ("Targets"), including Rogelio Garcia-Jimenez, at an address in Worthington, Minnesota ("Known Address"), comprised of a restaurant ("Restaurant"), and an apartment complex ("Apartments"). This included information from witnesses about drug trafficking and controlled purchases at the Known Address. Ex. A, at 2-5. The affidavit included a statement from a person who wished to remain anonymous that individuals from Storm Lake, Iowa, met with employees at the Restaurant to purchase drugs. Ex. A, at 2. The only information that involved Lopez-Zuniga or his vehicle consisted of the following:

1. On November 24, 2015, the affiant saw Lopez-Zuniga's vehicle drop off a person who resembled Garcia-Jimenez at the Known Address. Sometime later (it is unclear when), a named individual ("NI") and an undercover

---

[1] "Exhibit" and "Ex." refer to the exhibits included with Lopez-Zuniga's motion, which were admitted as evidence at the suppression hearing. Each side submitted a copy of the four warrants at issue, including their supporting applications and affidavits, with their pleadings. Defense Exhibit A corresponds to government Exhibit 1, and so on. For the sake of ease, I will refer to the exhibits by their letters A through D.

2

officer went to the Known Address. The NI went inside the Apartments and came out "[s]everal minutes later." The NI was arrested on an outstanding warrant several minutes after that, during which time officers found methamphetamine on the NI's person. The NI had told the undercover officer at some point that "his guy" (identified as Garcia-Jimenez) did not have any methamphetamine that day. It is unclear when the NI conveyed this information because the affidavit says it happened on the way "back to Iowa," which would imply after the NI went into the Apartments, but it seems from the context of the affidavit (including that the NI was arrested shortly after leaving the Apartments) that these statements were made before they arrived at the Apartments. The affidavit contains no information to show who, if anyone, the CI met with at the Apartments, which (if any) apartment the NI entered, and if that apartment was associated with Garcia-Jimenez or any Target.

2. On December 15, 2015, officers conducting surveillance at the Known Address saw Lopez-Zuniga and Garcia-Jimenez drive in Lopez-Zuniga's vehicle from the Known Address to a restaurant and shopping mall in Sioux Falls, South Dakota, and then back to the Known Address.

3. Over several months, officers conducted surveillance at the Known Address and a casino. The affiant believed that Lopez-Zuniga, Garcia-Jimenez, and other Targets were conspiring to sell drugs through the Restaurant and "possibly laundering" drug proceeds at the Restaurant and casinos, and that Lopez-Zuniga transported co-conspirators in his vehicle for those purposes.

Ex. A, at 6.

A state district court judge for Nobles County, Minnesota, issued the requested warrant[2] the same day and authorized the use of a mobile tracking device ("tracker") on Lopez-Zuniga's vehicle for a period of 60 days. Ex. A, at 8-9.

### B. *Warrant #2 (Exhibit B)*

On February 18, 2016, Special Agent Louwagie applied for a second warrant to use a tracker on Lopez-Zuniga's vehicle. Ex. B, at 1-8. The affidavit contained the same information as the affidavit in support of Warrant #1, excluding the general statement that officers conducted surveillance for several months at the Known Address (part of paragraph 3 above). The affidavit for Warrant #2 included the following additional information:

4. Use of the tracker pursuant to Warrant #1 showed that Lopez-Zuniga's vehicle traveled to the Known Address for short durations on nine specific dates between December 29, 2015, and February 9, 2016.

5. The use of the tracker pursuant to Warrant #1 showed that Lopez-Zuniga's vehicle made four trips from Worthington to Denison, Iowa, located approximately 125 miles south of Worthington and where a second establishment of the Restaurant was located. During the first trip, Lopez-Zuniga's vehicle stayed in Denison approximately eleven hours before returning to Worthington. During the next two trips, Lopez-Zuniga's vehicle traveled to Denison one day and returned the following day. On the fourth trip, Lopez-Zuniga's vehicle traveled to Denison and the

---

[2] The application and search warrant each refer to the vehicle by license plate number, year and color, vehicle identification number (VIN), and registered owner and address, but do not contain the make or model of the vehicle. In the supporting affidavit, the vehicle is referred to by license plate number (such as officers "observed MN License XXXXXX pull into" the Known Address), and one time as "the 1995 LeSabre."

4

following day drove thirteen miles to a gas station in Schleswi[g], Iowa, where it remained for a few minutes before returning to Denison. Lopez-Zuniga's vehicle then traveled back to Worthington two days later to the Known Address.

6. The use of the tracker pursuant to Warrant #1 showed that on January 19, 2016, Lopez-Zuniga's vehicle traveled approximately 40 miles from Worthington to Primghar, Iowa, where it stayed at a gas station for 25 minutes before returning to Worthington.

7. Information from use of a court-authorized pen register on Garcia-Jimenez's telephone numbers showed 154 telephone contacts between Garcia-Jimenez and Lopez-Zuniga between December 21, 2015, and February 11, 2016.

Ex. B, at 6-7.

A state district court judge for Nobles County, Minnesota, issued the requested warrant the same date, authorizing use of a tracker on Lopez-Zuniga's vehicle for a period to not exceed 60 days. Ex. B, at 9-10.

### C. Warrant #3 (Exhibit C)

On April 22, 2016, Special Agent Chris Nissen with the Iowa Division of Narcotics Enforcement submitted an application and supporting affidavit for a warrant to use a tracker on Lopez-Zuniga's vehicle. This affidavit included the same information regarding surveillance of Lopez-Zuniga and Garcia-Jimenez (described as "a known methamphetamine distributor in Southwest Minnesota and Northwest Iowa") going to a restaurant and mall in Sioux Falls on December 15, 2015 (paragraph 2 above). The affidavit also included the tracker information from Lopez-Zuniga's vehicle obtained

5

pursuant to Warrant #1 (paragraphs 4 and 5 above). The affidavit included the following new information, which did not appear in the prior affidavits:

8. Information obtained from use of the tracker pursuant to Warrant #2 that Lopez-Zuniga's vehicle traveled between Worthington and Denison six times between February 26 and April 14, 2016. These trips to Denison lasted from two to seven days. On two occasions, Lopez-Zuniga's vehicle traveled from Denison to Worthington and back to Denison the same day. During two trips to Worthington, Lopez-Zuniga's vehicle stopped at Garcia-Jimenez's residence (a new residence different than the Known Address) but never at Lopez-Zuniga's residence.

9. A statement that Lopez-Zuniga's vehicle was currently located in Denison at the residence of Lopez-Zuniga's brother.

10. Use of a court-authorized pen register showed 245 telephone contacts between Lopez-Zuniga and Garcia-Jimenez from January 24 to April 18, 2016, and regular contacts between Lopez-Garcia and "additional suspected methamphetamine traffickers to include" two named individuals, one from Denison and one from Sac City, Iowa.

11. On March 9, 2016, a confidential informant ("CI") made a controlled purchase of methamphetamine in Worthington. The CI arranged the controlled purchase through contact with Garcia-Jimenez, and Lopez-Zuniga was later identified as the person who then met with and provided the CI with approximately one ounce of methamphetamine and collected $1,300 from the CI.

12. A statement that based on use of a court-authorized pen register, officers believed that Lopez-Zuniga was currently located in Mexico.

13. A statement that officers believed Lopez-Zuniga and Garcia-Jimenez were conspiring to distribute methamphetamine in the Worthington area and that Lopez-Zuniga obtained methamphetamine in Denison, which he transported to Worthington for distribution.

Ex. C, at 4-7.

The affidavit did not contain information included in the prior affidavits regarding:
- drug-trafficking activities involving Garcia-Jimenez, other Targets, and the Known Address (Ex. A, at 2-5; Ex. B, at 2-5);
- that Lopez-Zuniga's vehicle was seen at the Known Address on November 24, 2015, prior to the "transaction" with NI (paragraph 1 above);
- surveillance over the course of months prior to use of the tracking device and belief statements that Lopez-Zuniga was involved in drug-trafficking and money-laundering activities (paragraph 3 above);
- travel of Lopez-Zuniga's vehicle to a gas station in Primghar on January 19, 2016 (paragraph 6 above); or
- telephone contacts between Garcia-Jimenez and Lopez-Zuniga between December 21, 2015, and February 11, 2016 (paragraph 7 above).

A state judge for Clay County, Iowa, issued the requested warrant the same day, authorizing the use of a tracker on Lopez-Zuniga's vehicle for a period of 60 days. Ex. C, at 13-14.

### D. *Warrant #4 (Exhibit D)*

On June 22, 2016, Special Agent Nissen applied for another warrant for use of a tracker on Lopez-Zuniga's vehicle. Ex. D, at 1-11, 14-15. The affidavit in support of

that warrant contained the exact same information as the affidavit submitted in support of Warrant #3 (Exhibit C) and included the following additional information:

14. On June 9, 2016, information from Homeland Security Investigations showed that Lopez-Zuniga reentered the United States through Texas. Lopez-Zuniga's vehicle began to travel around Denison the following day, on June 10, 2016.[3]

15. On June 12, 2016, Lopez-Zuniga's vehicle traveled from Denison to Worthington and "directly to the residence of Garcia-Jimenez." The vehicle stayed at that location overnight and returned to Denison the following day, June 13, 2016.

The same day, a state court judge for Clay County, Iowa, issued a warrant authorizing use of a tracker on Lopez-Zuniga's vehicle for another period of 60 days. Ex. D, at 12-13.

## II. LEGAL PRINCIPLES

"Placement of a [mobile] tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Jones*, 565 U.S. 400, 404 (2012)). Probable cause exists when, "under the totality of circumstances, there is a fair probability [that] evidence of a crime will be found in a particular place" or that the requested search will "lead to the discovery of evidence." *Id.* at 1144, 1146. This requires a nexus between the items officers are searching for and the place or item to be searched. *See United States v. Johnson*, 848 F.3d 872, 878

---

[3] Although unclear, I presume this latter information came from use of the tracker pursuant to Warrant #3.

(8th Cir. 2017). "Factors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *Id.* (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)).

Even if it is later determined that a warrant is not supported by probable cause, evidence obtained from that warrant need not be excluded if officers reasonably relied in good faith on the judge's issuance of the warrant. *United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003) (discussing the good faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984)). In determining the objective reasonableness of an officer's reliance on a warrant, a reviewing court looks at the totality of circumstances, including information known to officers but not presented to the judge who issued the warrant. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). Officers cannot rely in good faith on a warrant when the supporting affidavit is "so lacking in indicia of probable cause as to render [officers'] belief in its existence *entirely unreasonable*." *Carpenter*, 341 F.3d at 670 (quoting *Leon*, 468 U.S. at 923). Put another way, the issue is "whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Jackson*, 784 F.3d at 1231.

### III.   DISCUSSION

#### A.   *Warrant #1 (Exhibit A) and Warrant #2 (Exhibit B)*

The affidavits submitted in support of Warrant #1 and Warrant #2 lack probable cause to show that Lopez-Zuniga's vehicle would be used in drug-trafficking or money-laundering activities. First, there is very little information about Lopez-Zuniga. What information is included involves innocent activity. Unlike the facts in *Faulkner*, 826 F.3d at 1142-43, neither affidavit contains information about Lopez-Zuniga's engagement in criminal activity, let alone that such activity was ongoing in nature and involved use

9

of Lopez-Zuniga's vehicle. The present case also differs from the facts in *Colbert*, 828 F.3d at 726-27, where witness information and the target's own statements from intercepted calls showed the defendant sold drugs and supported a finding that evidence related to drug-trafficking proceeds would be found at the target's residence (and thus probable cause existed to search the residence).

The facts underlying Warrants #1 and #2 are most similar to the facts in *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000). In that case, the supporting affidavit contained significant information about the defendant's relatives and their involvement in cultivating marijuana on a target relative's property. *Id.* at 813-14. The only evidence regarding the defendant was his relationship to the targets, the fact that he had two prior convictions for cultivating marijuana, and that a target relative said he had recently resided at the defendant's residence to help harvest corn. *Id.* at 813-14 & nn. 1-2. The Eighth Circuit found no "reasonable officer would believe that these facts established probable cause to search [the defendant]'s residence for marijuana or the implements of its cultivation." *Id.* at 814. The Court went on to state that the officers who issued the affidavits in support of the warrant at issue "should have been fully aware of the deficiencies of their affidavits" because unlike "a technical legal deficiency[,] the affidavits simply d[id] not say very much about [the defendant] or his residence." *Id*.

At best, the affidavit for Warrant #1 shows that Lopez-Zuniga's vehicle dropped Garcia-Jimenez off at a location where a possible drug transaction occurred. The first problem is that there was no controlled purchase, and so there is no reliable information about where NI obtained the methamphetamine from. The NI went into the Apartments, but it is unclear which apartment (if any) the NI entered and who (if anyone) the NI met with. It is also not clear from the affidavit at what point, in relation to NI arriving at the Apartments, someone in Lopez-Zuniga's vehicle dropped Garcia-Jimenez off at that location. Furthermore, since there had been prior drug transactions at the Known

Address (none involving Lopez-Zuniga or his vehicle), it is more likely that the drugs found on NI (even if there had been a controlled transaction) came from the Known Address rather than Lopez-Zuniga's vehicle. The later travel to a restaurant and mall in Lopez-Zuniga's vehicle involved innocent activity and does not support a finding of probable cause. If the facts presented in the affidavit for Warrant #1 amount to probable cause, then *anyone* who drops a drug trafficker off at the trafficker's residence and travels with the trafficker for innocent activity, such as the trafficker's grandmother or mere acquaintance, would be subject to search. Warrant #1 is not supported by probable cause and accordingly, evidence obtained from that warrant should be suppressed.

The affidavit for Warrant #2 contained the same information as the affidavit for Warrant #1, plus information obtained from use of the tracker, which I believe should be suppressed and therefore excised from the affidavit. The only additional information contained in Warrant #2's affidavit is that Lopez-Zuniga and Garcia-Jimenez had telephone contact 154 times between December 21, 2015, and February 11, 2016. Although controlled purchases made from Garcia-Jimenez and others (not including Lopez-Zuniga) involved the use of telephones, there is no information in the affidavit, based on an officer's training and experience or otherwise, that the telephone contact between Lopez-Zuniga and Garcia-Jimenez might have involved drug trafficking or other criminal activity. Accordingly, there is no indication that the telephone contacts were anything other than innocent in nature. The remaining information is the belief statement that officers believed that Lopez-Zuniga "may" be assisting Garcia-Jimenez and other Targets in drug trafficking and "possibly laundering some of these drug proceeds" through the Restaurant and area casinos, and that Lopez-Zuniga was using his vehicle to transport Garcia-Jimenez and others. There is no information, however, to indicate that Garcia-Jimenez or other Targets were engaged in laundering drug proceeds at casinos, not even a statement that officer training and experience shows that drug

traffickers commonly launder proceeds at casinos. There is also no information, aside from the summary sentence above, to show that Lopez-Zuniga or his vehicle went to any casinos. While anything may be possible, probable cause requires facts showing a fair probability that use of a tracker on Lopez-Zuniga's vehicle will likely lead to the discovery of drug-trafficking evidence. The facts contained in the affidavit for Warrant #2 fall short of that standard.

The "extreme sanction" of the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges . . . ." *Carpenter*, 341 F.3d at 669 (quoting *Leon*, 468 U.S. at 916); *accord United States v. Simpkins*, 914 F.2d 1054, 1058 (8th Cir. 1990). With this in mind, I believe that no officer could have reasonably believed that the affidavits for Warrants #1 and #2 established probable cause to believe that Lopez-Zuniga or his vehicle were involved in drug trafficking or related activities. "The fact that an innocent purpose might explain [a person]'s conduct does not preclude the officers' good faith belief that evidence of drug trafficking would be found at the residence [where defendant traveled to and from] nor negate the officers' objectively reasonable belief that the warrant they obtained was valid." *Simpkins*, 914 F.2d at 1058. In *Simpkins*, the officers had information that defendant was directly involved in controlled purchases of drugs. The affidavits supporting Warrants #1 and #2, on the other hand, provide no indication that Lopez-Zuniga or his vehicle were involved in drug trafficking, and the only information regarding the vehicle's connection to Garcia-Jimenez entails innocent activity. Therefore, the facts in this case do not support a finding of good faith based on *Simpkins*.

Officers may also rely in good faith on a warrant to search a location connected to a defendant when an affiant describes the defendant's "continuous course of drug trafficking activity" and states that based on the affiant's training and experience, the warrant will likely lead to evidence of drug trafficking. *United States v. Ross*, 487 F.3d

1120, 1123-24 (8th Cir. 2007) (finding officer reasonably relied on warrant to search defendant's residence when no information connected residence to drug trafficking, but an informant provided information that a load of marijuana in a controlled delivery was destined for defendant, that the group used trucks to haul marijuana, and that the informant had delivered drugs to the defendant six months prior; and the defendant arrived at a location to meet a member of the group in a truck that had been at his residence earlier that morning). These situations involve inferences that the property to be searched will be involved in future drug-trafficking activity. *See id*; *United States v. Schermerhorn*, 71 F. Supp. 3d 948, 960-61 (E.D. Mo. 2014) (discussing additional information known to the affiant and the permissible inference that defendant's vehicle would likely be used in future drug trafficking in finding officers relied in good faith on tracking-device warrant). The affidavits for Warrants #1 and #2 do not contain information to show that Lopez-Zuniga or his vehicle were involved in ongoing drug trafficking, nor statements showing why evidence of such activity would be revealed through the location of his vehicle.

In other cases where officers were found to have relied in good faith on a warrant, evidence was presented regarding additional information the officers knew that made their reliance on the warrant objectively reasonable. *See Johnson*, 848 F.3d at 879 (noting affiant also knew in search for sex abuse evidence that defendant was a registered sex offender, had previously failed to register as a sex offender, lived with the victim's mother during the time of alleged abuse, and occasionally lived at the residence searched); *United States v. Pruett*, 501 F.3d 976, 981 (8th Cir. 2007) (recounting testimony of affiant at suppression hearing regarding additional information that corroborated information from an informant contained in the affidavit), *vacated on other grounds*, 552 U.S. 1241 (2008), *reinstated in relevant part*, 523 F.3d 863 (8th Cir. 2008); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (discussing affiant's testimony at

suppression hearing about additional surveillance at the place to be searched and that cocaine found prior to search warrant was consistent with distribution). In this case, there was no evidence presented about additional information the officers knew that would show they relied in good faith on either Warrant #1 or Warrant #2. The only indication that officers may have had additional information comes from the general statements that officers believed that Lopez-Zuniga was involved in drug-trafficking and money-laundering activities. Without knowing if officers had additional information and the nature of such information, those statements constitute mere suspicion that Lopez-Zuniga may have been engaged in illegal activity based on his association with Garcia-Jimenez. I am therefore unable to find that additional information supported officers' good-faith reliance on Warrant #1 or Warrant #2.

I do not believe Warrant #1 nor Warrant #2 are supported by probable cause to believe that information about the location of Lopez-Zuniga's vehicle would lead to the discovery of evidence. I also believe that because the supporting affidavits were so lacking in probable cause, any reliance on the warrants was unreasonable. Therefore, I recommend suppressing any evidence obtained pursuant to Warrant #1 and Warrant #2.

### B. *Warrant #3 (Exhibit C)*

The affidavit in support of Warrant #3 (Exhibit C) contains information from the tracker used pursuant to Warrants #1 and #2. As with the affidavit for Warrant #2, there is no explanation of why the travel activity of Lopez-Zuniga's vehicle is indicative of drug trafficking or other criminal activity. The affidavit also contains information about frequent telephone contacts between Lopez-Zuniga and Garcia-Jimenez, but no indication about why these telephone contacts relate to drug-trafficking activity, especially in light of the fact that there is no information in this affidavit that telephones were used to arrange controlled purchases. The affidavit does include a statement that Lopez-Zuniga was

"regularly in contact with additional suspected methamphetamine traffickers," but does not describe the source or reliability of information as to why these persons are <u>suspected</u> drug traffickers. Therefore, I do not believe these facts support a finding of probable cause to use a tracker on Lopez-Zuniga's vehicle.

The affidavit does show that Lopez-Zuniga handed methamphetamine to a confidential informant during a controlled purchase on March 9, 2016, although there was no information that Lopez-Zuniga drove his vehicle to or from the controlled purchase. Probable cause requires some indication that the property to be searched will be involved in future illegal activity. *See Ross*, 487 F.3d at 1123-24 (finding reasonable inference that evidence will be found at drug trafficker's residence based on evidence of defendant's ongoing drug-trafficking activity combined with officer's statement that evidence is often found at drug traffickers' residences); *Simpkins*, 914 F.2d at 1058 (noting implication from evidence in affidavit that the defendant was currently converting cocaine to crack cocaine at his residence). The affidavit for Warrant #3 contains no information, even based on the affiant's training and experience, to support an inference that Lopez-Zuniga's vehicle would likely be used in future drug transactions or otherwise lead to evidence of criminal activity. There must be a connection between the item to be searched and the criminal activity under investigation. *See Colbert*, 828 F.3d at 726; *see also Herron*, 215 F.3d at 814-15. Furthermore, the affidavit included information that while his vehicle was located in Denison, Lopez-Zuniga was in Mexico on April 20, 2016 (two days before Warrant #3 was issued). This negates an inference, if one could be made, that Lopez-Zuniga's vehicle would be used in future drug-trafficking activity, since the real link to drug-trafficking in this affidavit was Lopez-Zuniga (and not his vehicle). Therefore, I do not believe that Warrant #3 is supported by probable cause.

It is a much closer call whether the officers relied in good faith on this warrant. It is possible that Lopez-Zuniga drove his vehicle to or from the drug transaction on

March 9, 2016, from which the affiant could have inferred that it was likely he used the vehicle to transport drugs or drug proceeds. It is also possible that information from the tracker (if considered) coincided to locations associated with the additional "suspected" drug traffickers. I imagine that the locations and short duration of travels revealed from use of the tracker were significant to law enforcement officers. The affidavit contains no information regarding any of these possibilities, nor was such information introduced at the suppression hearing. Without knowing if and why these facts were significant to officers' beliefs that Lopez-Zuniga's vehicle was being and would be used in drug trafficking, or additional information known to the officers but not contained in the affidavit, I cannot say that officers reasonably relied on the search warrant that I believe clearly lacks probable cause. Accordingly, I recommend suppressing evidence obtained through the use of Warrant #3.

### C. *Warrant #4 (Exhibit D)*

The only new facts contained in the affidavit for Warrant #4 was information that Lopez-Zuniga had returned from Mexico around June 9, 2016, that his vehicle (according to excludable information from the use of the tracker pursuant to Warrant #3) began to travel in the Denison area around June 10, 2016, and that the vehicle went to Garcia-Jimenez's residence where it remained overnight from June 12-13, 2016. For the reasons discussed above, I do not believe this, even in combination with the other facts in the affidavit, establishes probable cause to believe that the location of Lopez-Zuniga's vehicle would reveal evidence of drug trafficking. Likewise, I do not believe there is any basis to find that officers reasonably relied on the warrant. Thus, I recommend suppressing evidence that resulted from the use of the tracker pursuant to Warrant #4.

## IV. CONCLUSION

For the foregoing reasons, I RESPECTFULLY RECOMMEND that Defendant's motion to suppress (Doc. 18) be **granted**.

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections. LCrR 59. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DATED** this 10th day of August, 2017.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa