# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 17-CR-4009 |
| vs. | ORDER REGARDING REPORT AND RECOMMENDATION |
| JUAN LOPEZ-ZUNIGA | |
| Defendant. | |

This matter is before me on a Report and Recommendation (R&R) (Doc. No. 32) in which the Honorable Kelly K.E. Mahoney, United States Magistrate Judge, recommends that I grant defendant's amended motion to suppress (Doc. No. 18).

## I.  APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g. Grinder v. Gammon*, 73 F.3d

793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more exacting standard, even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## II. BACKGROUND

### A. Procedural History

On February 23, 2017, the grand jury returned an indictment (Doc. No. 2) charging defendant with one count of conspiracy to distribute methamphetamine. Defendant filed a motion (Doc. No. 15) to suppress evidence on May 15, 2017, and an amended motion (Doc. No. 18) to suppress on June 2, 2017. The Government filed a resistance (Doc. No. 26) to the amended motion on June 12, 2017. Judge Mahoney conducted a hearing on June 28, 2017, and issued her R&R on August 10, 2017. The Government filed objections (Doc No. 38) and defendant has responded (Doc. No. 42).

### B. Relevant Facts

This case involves the use of a GPS tracking device on defendant's vehicle. Special Agent Dan Louwagie of the Minnesota Bureau of Criminal Apprehension submitted an application for the first state warrant authorizing the use of the GPS device

on December 21, 2015. Ex. A at 1-7.[1] A state judge for Nobles County, Minnesota, issued a warrant (Warrant 1) authorizing the use of a GPS device for 60 days the same day. Ex. A at 8-9. The 60-day warrant was renewed three times (Warrants 2, 3 and 4), following an application for an extension in Nobles County on February 18, 2016, and subsequent extensions granted upon application of Special Agent Chris Nissen, Iowa Department of Public Safety, Narcotics Enforcement Division, in Clay County, Iowa, on April 22, 2016, and June 22, 2016. *See* Exs. B, C, D. While the device was in place, police officers also obtained a warrant to conduct a pen registry search on defendant's phone. Ex. C at 6. Additionally, during the pendency of the second GPS device warrant, a confidential informant executed a controlled buy of amphetamines involving defendant. Ex. C at 7.

The main issue is whether the warrants authorizing the use of the GPS device were supported by probable cause. The relevant facts from each warrant, along with Judge Mahoney's findings, are summarized below. Also at issue is whether the good faith exception applies, negating the need to suppress.

C.   *The R&R*

Because much of the information in the four warrants is the same, Judge Mahoney began by determining whether Warrant No. 1 (Ex. A) was supported by probable cause. Warrant 1 contains the following statements regarding defendant:

> On November 24, 2014 Iowa Department of Narcotics Enforcement [Agent] who was acting in an undercover capacity along with [Named Individual (NI)] went to Garcia Jimenez [at Known Address]. [Agent] stayed in the vehicle while [NI] went inside of the apartment complex.
>
> While [Agent] and [NI] were driving back to Iowa [NI] informed [Agent] that his guy (Garcia Jimenez) was out of methamphetamine earlier

---

[1] Both defendant and the Government filed all four warrants as exhibits A through D and exhibits 1 through 4, respectively. I will refer to the exhibits by their letters A through D.

in the day and that Garcia Jimenez would be getting in a shipment in [sic] on Monday, November 30, 2015.

Several minutes later [NI] exited the apartment complex and got back into [Agent]'s vehicle. [NI] was arrested several minutes later for an outstanding arrest warrant. While [NI] was being searched a quantity of methamphetamine was recovered.

Prior to the transaction with [Agent] and [NI] your Affiant was conducting surveillance at [Known Address]. While conducting surveillance your Affiant observed MN License 498-MHJ pull into [Known Address] and drop off an individual who resembled Garcia Jimenez.

On 12/15/2015 members of the Buffalo Ridge Drug Task Force were conducting surveillance at [Known Address].

During surveillance Buffalo Ridge Drug Task Force Agent Joe Joswiak observed Juan Jose Lopez-Zuniga and Rogelio Magana Garcia Jimenez get into MN Lic[.] 498-MHJ. Surveillance personnel followed Lopez-Zuniga and Garcia Jimenez to Sioux Falls, SD.

Surveillance personnel followed Garcia Jimenez and Lopez Zuniga to a restaurant and the shopping mall in Sioux Falls, SD before they returned to Worthington, MN.

***

Your affiant with other law enforcement personnel believe that [Garcia]Jimenez, Lopez-Zuniga and [Named Individual] are conspiring to sell illegal drugs through [Restaurants] and possibly laundering some of these drug proceeds through the [Restaurant] and area casinos and that Lopez Zuniga is transporting Jimenez and or other individuals in the 1995 LeSabre for this purpose.

Ex. A, at 6. Following this recitation, along with five additional pages of evidence which do not relate to defendant, Louwagie was granted permission to install the GPS device on defendant's vehicle.

Judge Mahoney found probable cause was lacking:

First, there is very little information about Lopez-Zuniga. What information is included involves innocent activity. Unlike the facts in

4

*Faulkner*, 826 F.3d at 1142-43, neither affidavit contains information about Lopez-Zuniga's engagement in criminal activity, let alone that such activity was ongoing in nature and involved use of Lopez-Zuniga's vehicle. The present case also differs from the facts in *Colbert*, 828 F.3d at 726-27, where witness information and the target's own statements from intercepted calls showed the defendant sold drugs and supported a finding that evidence related to drug-trafficking proceeds would be found at the target's residence (and thus probable cause existed to search the residence).

The facts underlying Warrants #1 and #2 are most similar to the facts in *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000). In that case, the supporting affidavit contained significant information about the defendant's relatives and their involvement in cultivating marijuana on a target relative's property. *Id.* at 813-14. The only evidence regarding the defendant was his relationship to the targets, the fact that he had two prior convictions for cultivating marijuana, and that a target relative said he had recently resided at the defendant's residence to help harvest corn. *Id.* at 813-14 & nn. 1-2. The Eighth Circuit found no "reasonable officer would believe that these facts established probable cause to search [the defendant]'s residence for marijuana or the implements of its cultivation." *Id.* at 814. The Court went on to state that the officers who issued the affidavits in support of the warrant at issue "should have been fully aware of the deficiencies of their affidavits" because unlike "a technical legal deficiency[,] the affidavits simply d[id] not say very much about [the defendant] or his residence." *Id.*

At best, the affidavit for Warrant #1 shows that Lopez-Zuniga's vehicle dropped Garcia-Jimenez off at a location where a possible drug transaction occurred. The first problem is that there was no controlled purchase, and so there is no reliable information about where NI obtained the methamphetamine from. The NI went into the Apartments, but it is unclear which apartment (if any) the NI entered and who (if anyone) the NI met with. It is also not clear from the affidavit at what point, in relation to NI arriving at the Apartments, someone in Lopez-Zuniga's vehicle dropped Garcia-Jimenez off at that location. Furthermore, since there had been prior drug transactions at the Known Address (none involving Lopez-Zuniga or his vehicle), it is more likely that the drugs found on NI (even if there had been a controlled transaction) came from the Known Address rather than Lopez-Zuniga's vehicle. The later travel to a restaurant and mall in Lopez-Zuniga's vehicle involved innocent activity and does not support a finding of probable cause. If the facts presented in the affidavit for Warrant #1 amount to probable cause, then *anyone* who drops a drug

5

trafficker off at the trafficker's residence and travels with the trafficker for innocent activity, such as the trafficker's grandmother or mere acquaintance, would be subject to search. Warrant #1 is not supported by probable cause and accordingly, evidence obtained from that warrant should be suppressed.

Doc. No. 32 at 9-12.

Warrant 2 contained little additional information involving defendant. Judge Mahoney summarized the information in Warrant 2's affidavit as follows, and concluded that it also was not supported by probable cause:

> The affidavit for Warrant #2 contained the same information as the affidavit for Warrant #1, plus information obtained from use of the tracker, which I believe should be suppressed and therefore excised from the affidavit. The only additional information contained in Warrant #2's affidavit is that Lopez-Zuniga and Garcia-Jimenez had telephone contact 154 times between December 21, 2015 and February 11, 2016. Although controlled purchases made from Garcia-Jimenez and others (not including Lopez-Zuniga) involved the use of telephones, there is no information in the affidavit, based on an officer's training and experience of otherwise, that the telephone contact between Lopez-Zuniga and Garcia-Jimenez might have involved drug trafficking or other criminal activity. Accordingly, there is no indication that the telephone contacts were anything other than innocent in nature. The remaining information is the belief statement that officers believed that Lopez-Zuniga "may" be assisting Garcia-Jimenez and other Targets in drug trafficking and "possibly laundering some of these drug proceeds" through the Restaurant and area casinos, and that Lopez-Zuniga was using his vehicle to transport Garcia-Jimenez and others. There is no information, however, to indicate that Garcia-Jimenez or other Targets were engaged in laundering drug proceeds at casinos, not even a statement that officer training and experience shows that drug traffickers commonly launder proceeds at casinos. There is also no information, aside from the summary sentence above, to show that Lopez-Zuniga or his vehicle went to any casinos. While anything may be possible, probable cause requires facts showing a fair probability that use of a tracker on Lopez-Zuniga's vehicle will likely lead to the discovery of drug-trafficking evidence. The facts contained in the affidavit for Warrant #2 fall short of this standard.

Doc. No. 32 at 11-12.

6

Judge Mahoney next addressed whether the "good faith reliance" exception established in *United States v. Leon*, 468 U.S. 897 (1984), applies with regard to Warrants 1 and 2. Judge Mahoney found that the exception does not apply because "no officer could have reasonably believed that the affidavits for Warrants #1 and #2 established probable cause to believe that Lopez-Zuniga or his vehicle were involved in drug trafficking or related activities." *Id.* at 12. Excluding the data obtained during the pendency of the first invalid warrant, both warrants were facially devoid of "information to show that Lopez-Zuniga or his vehicle were involved in ongoing drug trafficking, [or] statements showing why evidence of such activity would be revealed through the location of his vehicle." *Id.* at 13.

The affidavits for Warrants 3 and 4 were drafted by Nissen. As with Warrants 1 and 2, much of the information contained in Nissen's affidavit is duplicative. Excluding the GPS data, Warrant 3 included the following evidence in support of the request for a 60 day extension for the GPS tracker:

> Law enforcement applied for and was granted a Pen register order for the phone number belonging to Garcia-Jimenez . . . , as a result of this Pen register order your affiant learned that Garcia-Jimenez has received/made phone calls and or text messages to/from Lopez Zuniga.
>
> On January 24, 2014 Law enforcement began to monitor the phone tolls of Lopez-Zuniga's phone number . . . pursuant to a pen register order. While monitoring those tolls law enforcement learned that Lopez-Zuniga had made 245 contacts to and from Garcia-Jimenez between January 24, 2016 and April 18, 2016. It was also learned that Lopez-Zuniga is regularly in contact with additional suspected methamphetamine traffickers . . . .
>
> On March 9, 2016 [the CI] made arrangements with Garcia-Jimenez to purchase one ounce of methamphetamine. During this controlled purchase the CI was instructed by Garcia-Jimenez to go to the Thompson Apartments located [at Known Address].
>
> Garcia-Jimenez informed the CI that once the CI arrived the CI was to go inside the [Apartments] and go to the elevator and go to the 3rd floor.

7

> The CI took the elevator to the 3rd floor and when the elevator doors opened the CI was met by a Hispanic male later identified as Lopez-Zuniga.
>
> Lopez-Zuniga gave the CI one plastic bag containing approximately one ounce of purported methamphetamine and the CI paid Zuniga $1,300 in pre-recorded BCA confidential buy funds.
>
> On April 20, 2016[,] Law enforcement, [while] monitoring Lopez-Zuniga's cell phone based on the court issued pen order, [learned] that Lopez-Zuniga's phone was currently located within the country of Mexico.
>
> Law enforcement personnel believe that Lopez-Zuniga and Garcia-Jimenez are conspiring to sell methamphetamine in the Worthington, MN area and that Lopez-Zuniga travels to Denison, IA to purchase or obtain quantities of methamphetamine and then transports the methamphetamine to Worthington, MN to be distributed.

Ex. C at 6-7. The affidavit in support of Warrant 4 is virtually identical to the affidavit for Warrant No. 3, except that it contains GPS data for an additional 60 days and states that law enforcement learned Lopez-Zuniga re-entered the United States via the Laredo, Texas, port of entry on June 9, 2016. Ex. D at 7.

Judge Mahoney found that this additional information was not probable cause to support the extended GPS tracking of defendant's vehicle:

> As with the affidavit for Warrant #2, there is no explanation of why the travel activity of Lopez-Zuniga's vehicle is indicative of drug trafficking or other criminal activity. The affidavit also contains information about frequent telephone contacts between Lopez-Zuniga and Garcia-Jimenez, but no indication about why these telephone contacts relate to drug-trafficking activity, especially in light of the fact that there is no information in this affidavit that telephones were used to arrange controlled purchases. The affidavit does include a statement that Lopez-Zuniga was "regularly in contact with additional suspected methamphetamine traffickers," but does not describe the source or reliability of information as to why these persons are <u>suspected</u> drug traffickers. Therefore, I do not believe these facts support a finding of probable cause to use a tracker on Lopez-Zuniga's vehicle.

> The affidavit does show that Lopez-Zuniga handed methamphetamine to a confidential informant during a controlled purchase on March 9, 2016, although there was no information that Lopez-Zuniga drove his vehicle to or from the controlled purchase. Probable cause requires some indication that the property to be searched will be involved in future illegal activity. *See Ross*, 487 F.3d at 1123-24 (finding reasonable inference that evidence will be found at drug trafficker's residence based on evidence of defendant's ongoing drug-trafficking activity combined with officer's statement that evidence is often found at drug-trafficker's residences); *Simpkins*, 914 F.2d at 1058 (noting implication from evidence in affidavit that the defendant was currently converting cocaine to crack at his residence). The affidavit for Warrant #3 contains no information, even based on the affiant's training and experience, to support an inference that Lopez-Zuniga's vehicle would likely be used in future drug transactions or otherwise lead to evidence of criminal activity. There must be a connection between the item to be search and the criminal activity under investigation. *See Colbert*, 828 F.3d at 726; *see also Herron*, 215 F.3d at 814-15. Furthermore, the affidavit included information that while his vehicle was located in Denison, Lopez-Zuniga was in Mexico on April 20, 2016 (two days before Warrant #3 was issued). This negates an inference, if one could be made, that Lopez-Zuniga's vehicle would be used in future drug-trafficking activity, since the real link to drug-trafficking in this affidavit was Lopez-Zuniga (and not his vehicle). Therefore, I do not believe that Warrant #3 is supported by probable cause.

Doc. No. 32 at 14-15. Judge Mahoney further found that the inclusion of defendant's return from Mexico in Warrant 4 was not enough to establish probable cause.

Turning to the issue of good faith reliance on Warrants 3 and 4, Judge Mahoney noted it was a much closer question than whether investigating officers had reasonably relied on Warrants 1 and 2. Judge Mahoney stated:

> It is possible that Lopez-Zuniga drove his vehicle to or from the drug transaction on March 9, 2016, from which the affiant could have inferred that it was likely he used the vehicle to transport drugs or drug proceeds. It is also possible that information from the tracker (if considered) coincided to locations associated with additional "suspected" drug traffickers. I imagine that the locations and short duration of travels revealed from use of the tracker were significant to law enforcement officers. The affidavit contains no information regarding any of these possibilities, nor was such information introduced at the suppression hearing. Without knowing if and

9

why these facts were significant to officers' beliefs that Lopez-Zuniga's vehicle was being and would be used in drug trafficking, or additional information known to the officers but not contained in the affidavit, I cannot say that officers reasonably relied on the search warrant that I believe clearly lacks probable cause.

Doc. No. 32 at 15-16.

Based on these findings, Judge Mahoney recommends that I grant defendant's motion to suppress the GPS evidence.

### III. DISCUSSION

#### A. *Warrants 1 and 2*

##### 1. *Probable Cause*

The Government objects to Judge Mahoney's findings, arguing she "misses the mark in that the focus of the search warrants is on the totality of the circumstances involving Lopez-Zuniga's *vehicle* and not Lopez-Zuniga himself." Doc. No. 38 at 3. The Government argues it has established a nexus between a known drug dealer, Garcia-Jimenez, and defendant's vehicle, thereby establishing probable cause to track the vehicle's movements by GPS device.

"Placement of a GPS tracking device on a vehicle is a 'search' within the meaning of the Fourth Amendment, requiring probable cause and a warrant." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Jones*, 565 U.S. 400, 404 (2012)). Probable cause exists when, "under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place" or the requested search will "lead to the discovery of evidence." *Id.* at 1144, 1146. This requires a nexus between the items officers are searching for and the place or item to be searched. *See United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017). "Factors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *Id.* (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016)); *see also United States v. Schermerhorn*, 71

10

F. Supp. 3d 948, 956 (E.D. Mo. 2014) (probable cause was lacking where the government failed to establish "a relationship between either, the *known drug dealer* and the ***driver of the specific car***, or the *known drug dealer* and the ***specific car***") (emphasis in original).

Both sides below argue that the facts of this case are best explained by comparison to *Schermerhorn*. According to defendant, his case is directly analogous to *Schermerhorn*, requiring a finding that probable cause is lacking. Doc. No. 18 at 5-7. The Government argues that all that was lacking in *Schermerhorn* was a nexus between the known drug dealer and the driver or the known drug dealer and the car, and that the Government has established probable cause by showing a connection between the known drug dealer, Garcia-Jimenez, and defendant's car on two occasions. Doc. No. 38 at 4-5.

In *Schermerhorn*, the court held that the Government failed to establish the required nexus between the place to be searched by GPS device (a car) and the drug dealer. 71 F. Supp. 3d at 956. The warrant at issue in *Schermerhorn* was similar to the warrant in the present case: officers described surveillance efforts regarding a known drug dealer, Nguyen. *Id.* at 952-53. During surveillance, a DEA agent observed the following related to Schermerhorn:

1. A blue Honda Civic pulled into the parking lot of Nguyen's place of work. Nguyen entered the Civic. The Civic pulled out of the parking lot; officers followed the car and ran a records check for the license on the Civic, learning that it was registered to Schermerhorn.

2. The Civic travelled to an apartment building. Both the driver and Nguyen exited the car and entered the apartment building. Roughly ten minutes later, the pair exited the building and returned to the Civic. Before sitting in the front passenger seat, Nguyen placed a duffel bag that he carried from the building into the trunk.

3. Officers followed the Civic to Arkansas. The surveillance officers briefly lost sight of the Civic, but found it parked in front of a residence approximately fifteen minutes later. Nguyen was standing

       4. in the street talking on his cell phone, several black males were on the front porch of the residence, but the driver was not seen. The Officer testified that he does not know what happened to the duffel bag or what was in the duffel bag.

       4. The local DEA Field Office informed surveillance officers that the residence where the Civic was parked was the focus of an ongoing investigation and was "believed to be at the center of a large scale marijuana and methamphetamine distribution operation."

*Id.* The subsequent GPS warrant, which was based solely on the above information, was held to be unsupported by probable cause because the above information did not establish the required nexus between the evidence to be seized and the place to be searched. *Id.* at 953, 56. Although "[i]t is true that the fact that a *known drug dealer* travelled with a driver in a specific car on one occasion to a *known drug supplier's residence* may establish a fair probability that the car will be used to make future trips to facilitate drug trafficking activities," the above facts did not provide enough information to justify the installation of a GPS device. *Id.* at 957 (emphasis in original). Put another way, even though this one trip was suspicious, the officers were required to provide some evidence that this suspicious event was not an isolated event before they tracked the car for a lengthy period of time.

    Defendant's case is distinguishable from *Schermerhorn* in two ways. First, the events in *Schermerhorn* were *more* likely to indicate a drug deal involving Schermerhorn's vehicle than were the facts of the present case. As Judge Mahoney explained, there is nothing to suggest defendant's two interactions with Garcia-Jimenez were anything other than innocent. Although anything is possible, officers applying for a warrant are required to identify facts which support a probability that the search will uncover evidence or contraband. If the two interactions described in Louwagie's affidavit are sufficient to establish probable cause, *anyone* could become subject to 240 days of GPS tracking. In *Schermerhorn*, there was at least some evidence that the Schermerhorn's vehicle was used in a drug transaction observed by officers (although it

was not enough to justify GPS tracking). Second, and less significantly, the warrant application here described two interactions between the defendant's car and Garcia-Jimenez, in *Schermerhorn* there was only one recorded interaction between the known drug dealer and the defendant's car. *Id.* at 952-53.

The Government focuses much of its argument on the second distinction between *Schermerhorn* and the present case—that there were *two* interactions observed between defendant's car and Garcia-Jimenez, as opposed to the *one* interaction observed in *Schermerhorn*. The Government argues that considering the totality of the evidence, two interactions with a known drug dealer establishes the nexus that was missing in *Schermerhorn*. This argument misses the mark. The fact that there was a second innocent interaction between defendant and Garcia-Jimenez does not make it more likely defendant's vehicle is being used in trafficking activities. In *Schermerhorn*, the one-time use of a car to complete a likely drug transaction was not enough to support an inference the same car would be used in the future. *Id.* at 957. The fact that there were two innocent interactions between a known drug dealer and a car is equally not enough to support an inference the same car will be used in future drug transactions. This case is akin to cases such as *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000), in which officers had a hunch based on a mere relationship with a target drug dealer, and included the defendant in their warrant application based solely on an innocent connection. Like the defendant in *Herron*, defendant takes up so little space in the overall affidavit that it seems as though his information was pasted into the ongoing investigation against Garcia-Jimenez as an afterthought. *Id.* at 814 n.1, 815.

I agree with Judge Mahoney that there is nothing in the affidavit attached to Warrant 1 to establish defendant's car has been or is likely to be used in trafficking activities. Warrant 2 adds nothing to the analysis that could be used to create the required nexus between defendant's *vehicle* and the drug trafficking activities at issue. The Government's objections to Judge Mahoney's R&R are overruled.

## 2. *The Good Faith Exception*

The Government next argues Judge Mahoney erred in finding no reasonable officer could rely on Warrants 1 and 2 because she relied on a case that was distinguishable and inapplicable to the present situation. Doc. No. 38 at 9.

Where it is later determined a warrant is not supported by probable cause, evidence from a warrant need not be excluded if officers reasonably relied in good faith on the judge's issuance of the warrant. *United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003) (discussing the good faith exception outlined in *Leon*). To determine whether an officer's reliance on a warrant was objectively reasonable, a reviewing court considers the totality of the circumstances, including information known to officers but not presented to the judge who issued the warrant. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). Officers cannot rely in good faith on a warrant when the supporting affidavit is "so lacking in indicia of probable cause as to render [officers' belief in its existence *entirely unreasonable*." *Carpenter*, 341 F.3d at 670 (quoting *Leon*, 468 U.S. at 923). The issue is "whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Jackson*, 784 F.3d at 1231.

The Government spent considerable time objecting to Judge Mahoney's use of the *Herron* case, which it argues is factually distinguishable and therefore inapplicable. Doc. No. 38 at 8-9. Specifically, "*Herron* is inapplicable because [of its] context (i.e. house versus GPS tracking device on a vehicle), target (i.e. person versus vehicle), and information relied upon by law enforcement (i.e. historical versus direct evidence). . . Here, agents sought the search warrants in the form of placing a GPS tracking device on a vehicle for suspected drug transportation—which is a mobile, less predictable form of drug trafficking." *Id.* at 9. This argument is unconvincing. First, as discussed above, the use of a GPS device is a search subject to the requirements of the Fourth Amendment. *Faulkner*, 826 f.3d at 1144. The use of a GPS device requires a warrant, and a warrant

14

requires probable cause. *Id.* The Fourth Amendment protections do not disappear because the protected area is a car instead of a home.

Second, the argument that officers were not targeting defendant, but rather were targeting his vehicle, does not overcome my finding that they failed to develop probable cause to search the vehicle. Again, vehicles are protected by the Fourth Amendment. The Government's contention that this case involves historical rather than direct evidence of defendant's alleged involvement in drug trafficking does distinguish this case from *Herron* in terms of the probable cause analysis. However, as discussed above, the alleged "direct evidence" of defendant's involvement, as used to obtain the first two warrants, shows only innocent behavior. Clearly, the fact that behavior may have an innocent explanation does not preempt a finding of good faith reliance. *See United States v. Simpkins*, 914 F.2d 1054, 1058 (8th Cir. 1990). Here, though, the totality of the circumstances enumerated in Warrants 1 and 2 failed to support an inference that defendant was involved in drug trafficking. Finally, the distinction between drug transporting and drug trafficking is not explained, either in the subsequent sections of the Government's briefs or by citation. Regardless, the type of crime under investigation does not affect the level of probable cause required before officers are permitted to track a suspect's car.

The Government next argues *Schermerhorn* supports a finding of good faith reliance. Doc. No. 38 at 9. In *Schermerhorn*, the court held that officers relied in good faith on a facially deficient warrant because they had knowledge of additional information which would have established probable cause. 71 F. Supp. 3d at 957-59. Officers testified to these facts during a hearing on the motion to suppress. *Id.* at 960-62. Several cases demonstrate that officers can overcome the lack of probable cause supporting a warrant by testifying to the facts they relied on in seeking the warrant, establishing that their reliance on the warrant was in fact in good faith. *See, e.g., United States v. Pruett*, 501 F.3d 976, 981 (8th Cir. 2007) (recounting testimony of affiant at suppression hearing regarding additional information that corroborated information from an informant

15

contained in the affidavit), *vacated on other grounds*, 552 U.S. 1241 (2008), *reinstated in relevant part*, 523 F.3d 863 (8th Cir. 2008); *Johnson*, 848 F.3d at 870 (noting affiant also knew in search for sex abuse evidence that defendant was a registered sex offender, had previously failed to register as a sex offender, lived with the victim's mother during the time of alleged abuse and occasionally lived at the residence searched); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (discussing affiant's testimony at suppression hearing about additional surveillance at the place to be searched and that cocaine found prior to search warrant was consistent with distribution).

Here, the Government did not attempt to establish the facts that were missing from the affidavit, such as facts analogous to those in *Schermerhorn* that the apartment the drug dealer and the defendant visited to retrieve a duffel bag of potential drugs was in fact the defendant's residence. 71 F. Supp. 3d at 956-57. Thus, despite minor factual variations between this case and *Herron*, Judge Mahoney did not err in relying on *Herron* where the Government offered no further evidence to overcome the deficiencies of the facially invalid warrant. Accordingly, the Government's objection is overruled.

B. *Warrants 3 and 4*
1. *Probable Cause*

After striking the illegally-obtained GPS data from the applications for Warrants 3 and 4, there is little information to support prolonged GPS tracking of defendant's vehicle. The Government again objects that Judge Mahoney did not take into account the "totality of the circumstances" in evaluating probable cause in support of these warrants. The Government relies on the allegations that defendant was in regular phone contact with Garcia-Jimenez and "other suspected methamphetamine dealers," defendant's participation in a controlled buy and the inferences the Government alleges officers could make from the GPS data.

The Government's argument that Judge Mahoney failed to consider the inferences which officers could draw from defendant's movements is problematic for two reasons.

First, although officers certainly could infer from the GPS tracking that the defendant was making frequent, short trips between restaurants that were being targeted as a part of the methamphetamine conspiracy, they could not reach this inference without relying on the GPS data, which will be suppressed. Second, even if officers could consider these inferences in support of Warrants 3 and 4, there is no evidence as to what they may or may not have inferred. Nissen did not explain what inferences he was drawing, or how the GPS data supported defendant's involvement in the alleged conspiracy. He did, however, provide an innocent explanation for the frequent trips to Denison, Iowa, where one of the target restaurants was located: defendant's brother lived there. Ex. D at 6. During one of the periods during which defendant's car was in the same town as the target restaurant, defendant was actually in Mexico. *Id.* at 15. Again, virtually anything may be possible, but probable cause requires facts showing a fair probability that use of a tracker on defendant's vehicle will likely lead to the discovery of drug-trafficking evidence. The Government had the opportunity during the June 28, 2017, hearing to explain the inferences officers made in support of the warrant applications. However, it did not call any witnesses and instead stood on its brief and the warrant applications. Doc. No. 35 at 4.

Additionally, I agree with Judge Mahoney that the phone contacts with Garcia-Jimenez and the circumstances of the controlled buy are not sufficient to establish probable cause to support GPS tracking of defendant's vehicle. Certainly, these phone contacts could suggest that defendant was in a conspiracy with Garcia-Jimenez to distribute methamphetamine using their cell phones, especially when considered in conjunction with the evidence of the controlled buy. *See, e.g. Simpkins*, 914 F.2d at 1058. However, this case is distinguishable from *Simpkins*. In *Simpkins*, a series of controlled buys and the use of a cell phone to complete a controlled buy, combined with the timing of the defendant coming and going from his house before and after the controlled buys, was sufficient to support an inference that contraband would be found at the his house. *Id.* However, unlike *Simpkins*, nothing about the phone contacts or the

17

controlled buy in this case indicate that defendant or Garcia-Jimenez were using defendant's car as a part of their alleged conspiracy.  If a potential drug sale involving defendant's vehicle was not enough to establish probable cause for GPS tracking, as in *Schermerhorn*, a buy without the vehicle, and without evidence the vehicle was involved, likewise failed to support GPS tracking.

### 2. *The Good Faith Exception*

The Government argues that the totality of the circumstances surrounding the investigation of defendant allowed officers to rely in good faith on Warrants 3 and 4. The problem with this argument is that it offers no evidence in support of the officer's reliance on the warrants.  The Government fails to explain how the officers could assume there was a nexus between the drug trafficking and defendant's vehicle, without ever establishing that there was a connection between the two.

In *Schermerhorn*, officers had reason to suspect the defendant was assisting a known drug dealer with transportation based on the facts that officers followed defendant and the drug dealer to the defendant's house, then watched them apparently retrieve a duffel bag from the house and deliver the duffel bag to a second residence that was under investigation for drug trafficking.  71 F. Supp. 3d at 957.  The fatal flaw in the warrant was that some of the above information was missing from the affidavit, although it was known to the officers.  Here, as discussed above, it is impossible to discern whether the officers were in possession of additional information establishing the missing nexus between defendant's vehicle and the drug trafficking at issue so as to justify 240 days of GPS tracking.  Thus, their record contains no evidence from which I could conclude that the officers relied in good faith on Warrants 3 and 4.

## IV. CONCLUSION

1. For the reasons set forth herein, I **adopt** the Report and Recommendation (Doc. No. 32) **without modification**.

2. The Government's objection (Doc. No. 38) to the Report and Recommendation is **overruled**

3. Defendant's amended motion to suppress evidence (Doc. No. 18) is **granted**. All information obtained as a result of the GPS tracking device installed on defendant's vehicle is hereby **suppressed** on grounds that it was gathered in violation of defendant's Fourth Amendment rights.

**IT IS SO ORDERED.**

**DATED** this 18th day of September, 2017.

_____
Leonard T. Strand, Chief Judge